UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MATTHEW BENINCASA,

        Plaintiff,

v.

JACK DANIELS AUDI OF UPPER
SADDLE RIVER, INC.,

        Defendant.

Civ. No. 17-6322 (KM) (MAH)

OPINION

### KEVIN MCNULTY, U.S.D.J.:

The plaintiff, Matthew Benincasa, alleges that he experienced age-based harassment when employed by Jack Daniels Audi of Upper Saddle River, Inc. ("Jack Daniels Audi"), and that Jack Daniels Audi discriminatorily terminated his employment as a car salesman on account of his age. Jack Daniels moves to dismiss the complaint and have the matter referred to arbitration, citing an arbitration Agreement with Mr. Benincasa. I will grant Jack Daniels Audi's motion to dismiss the case and refer the matter to arbitration.

## I. Summary of Facts[1]

From November 2013 to May 2017, Mr. Benincasa was a car salesman at Jack Daniels Audi in Upper Saddle River, New Jersey. (AC ¶¶ 21–23.) While at Jack Daniels Audi, he claims, he was the victim of age-based harassment from other, younger employees at the dealership. (*Id.* ¶¶ 26–31.) He reported this harassment to the Human Resources department, management, and ownership at Jack Daniels Audi, but was rebuffed. (*Id.* ¶¶ 34–39.)

On May 1, 2017, Benincasa was terminated from his position. (*Id.* ¶ 45.) He says that Jack Daniels Audi's stated reason for firing him concerned a photograph he took of another employee. (*Id.*) He claims, however, that this was a pretext and that he was actually fired on account of his age and in retaliation for reporting the harassment. (*Id.* ¶ 46.) Mr. Benincasa has filed a complaint and has made claims under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*[2] (*Id.* ¶¶ 49–72.) Jack Daniels

---

[1] For the purposes of this motion to dismiss, I will assume the allegations of Mr. Benincasa are true. *See New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 301 (3d Cir. 2014). Record items cited repeatedly will be abbreviated as follows:

| | |
|---|---|
| Agreement = | Jack Daniels Motors Arbitration Agreement (ECF no. 9-6) |
| AC = | Amended Complaint (ECF no. 18) |
| Def. Br. = | Brief in Support of Defendant's Cross-Motion to Dismiss and Refer This Matter to Binding Arbitration (ECF no. 9) |
| Pl. Opp. = | Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint and Compel Arbitration (ECF no. 10) |
| Def. Reply = | Reply Brief (Letter) to Opposition to Motion (ECF no. 11) |
| Dubin Cert. = | Certification of Ron Dubin (ECF no. 15) |
| Pl. Sur. = | Response (Letter) in Opposition (ECF no. 16) |

[2] Mr. Benincasa has amended his complaint since the original one was filed. In lieu of a motion to amend, he simply filed the amended pleading. (ECF no. 18) In a letter (ECF no. 22), he explained that he needed to file the amended complaint quickly in order to comply with the 90-day deadline running from the EEOC Notice of Rights. Therefore, he asked for a *nunc pro tunc* order that would retroactively sanction his amendment as of the date it was filed. While the Amended Complaint adds claims

2

Audi replies that this court is not the proper forum for this dispute, citing the Jack Daniels Motors Arbitration Agreement. (Def. Br. at 4; *see also* Agreement, ECF no. 9-6.)

## II. Default

Mr. Benincasa raises the threshold issue that the motion must be dismissed because Jack Daniels Audi is in default. (Pl. Opp. at 6.) On January 18, 2018, however, I denied Mr. Benincasa's motion for default judgment and ordered that the Clerk's entry of default be vacated. (ECF no. 12.) The point is moot.

## III. Arbitrability

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, created a strong federal policy in favor of arbitration. It authorizes a party to enforce a valid and enforceable arbitration agreement by moving to compel such arbitration. *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012). Arbitration, however, is a matter of contract between parties, so a judicial mandate to arbitrate must be predicated on the parties' consent. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). In short, the court must be satisfied that the agreement to arbitrate is effective before compelling arbitration. *Id.* at 771.

The issue of arbitrability is generally one for the court. *See AT&T Techs., Inc. v. Comm'ns Workers of America*, 475 U.S. 643, 651 (1986). The applicable standard, however, is not straightforward. *Guidotti*, 716 F.3d at 773 (noting that pronouncements on the standard of review for arbitrability have been inconsistent because they involve the FAA's policy of "efficient and speedy

---

under the ADEA, it does not substantively alter the factual allegations or underlying events of the original Complaint. Nor does it affect Jack Daniels Audi's arbitrability arguments one way or the other. Seeing no prejudice, I will grant leave to amend as of the date of filing, and I will treat the Amended Complaint (ECF no. 18) as the operative pleading.

3

dispute resolution" but also the sometimes-competing policy of enforcing only such provisions as are written and validly agreed to).

When the affirmative defense of arbitrability of claims is apparent on the face of a complaint, including documents relied on in the complaint, a Rule 12(b)(6) standard applies. *Id.* at 773–74. When that is not the case, a "more deliberate pace"—*i.e.,* "limited discovery" followed by a "renewed motion to compel arbitration" under a Rule 56 summary judgment standard—is appropriate.[3]

Here, I determined that the first approach was not warranted. Moving to the second, "limited discovery" approach, I gave the parties the opportunity to submit affidavits and evidence "regarding the existence, corporate status, and relationships among Jack Daniels Audi of Upper Saddle River, Inc., Jack Daniels Motors, and any other relevant entities." (ECF no. 12.) The parties, both before and after I entered that order, submitted declarations and evidence in support of their contentions. (*See, e.g.,* ECF nos. 9, 10, 15.) There can be no claim of surprise, then, that I considered evidence extrinsic to the pleadings.

The Agreement in question is titled "Jack Daniels Motors Arbitration Agreement." (ECF no. 9-6.) There is no dispute as to the authenticity of that document.[4]

Mr. Benincasa says that because the agreement is titled "Jack Daniels Motors Arbitration Agreement," an entity called Jack Daniels Motors must be

---

[3]  Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Kreschollek v. S. Stevedoring Co.,* 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.,* 16 F.3d 1346, 1349 (3d Cir. 1994)).

[4]  Mr. Benincasa in his brief refers to the Agreement as an "alleged arbitration agreement." (*See, e.g.,* Pl. Opp. at 4, 6–7.) As outlined below, however, his dispute is not with the existence or authenticity of the document, but with its legal effect.

the "Employer" referred to in the agreement. (*Id.*) His real employer, he says, was not Jack Daniels Motors but Jack Daniels Audi, a non-contracting party.

As to the corporate relationships, a certification from Ron Dubin, Chief Operating Officer and Chief Financial Officer for the Jack Daniels Companies, sheds some light. (Dubin Cert., ECF no. 15) Dubin states that the Jack Daniels companies include

> [1] "Jack Daniels Motors, Inc. (d/b/a Jack Daniels Porsche, Jack Daniels Audi of Paramus, and Jack Daniels Volkswagen),
>
> [2] Jack Daniels Motors of Upper Saddle River, Inc. (d/b/a Jack Daniels Audi of Upper Saddle River),
>
> [3] Jack Daniels K Motors, LLC (d/b/a Jack Daniels Kia), amongst other entities."

(Dubin Cert. ¶ 1 ([bracketed] numbers and line breaks added).) [1] Jack Daniels Motors, Inc. was formed in 1972. As the business expanded and new dealerships were opened, new corporations were formed. These included [2] Jack Daniels Motors of Upper Saddle River, Inc., formed in 2001. The entities are all under common ownership. (Dubin Cert. ¶¶ 2–4.)

Dubin also makes the commonsense observation that the corporate names of independent dealerships would not ordinarily include the names of automobile manufacturers. (Dubin Cert. ¶ 6 n.1.) Thus Jack Daniels Motors of Upper Saddle River, Inc., sells Audis under the name of Jack Daniels Audi of Upper Saddle River. Such d/b/a names, by which the dealership is known to the public, use the name brand of the vehicles that the dealership sells.

I take judicial notice of the following public record, the result of a business name search on the website of the State of New Jersey Division of Revenue and Enterprise Services:



| Business Name | Entity Id | City | Type | Incorporated Date |
|---|---|---|---|---|
| JACK DANIELS K MOTORS LLC | 0400252011 | UPPER SADDLE RIVER | LLC | 9/30/2008 |
| JACK DANIELS LEASING CORP. | 0100128209 | | DP | 12/15/1980 |
| JACK DANIELS MOTORS OF UPPER SADDLE RIVER, INC. | 0100860344 | UPPER SADDLE RIVER | DP | 9/14/2001 |
| JACK DANIELS MOTORS, INC. | 4956282500 | UPPER SADDLE RIVER | DP | 6/30/1972 |
| JACK DANIELS WARRANTY COMPANY | 0450126169 | UPPER SADDLE RIVER | DP | 12/14/2016 |

This official record corroborates Dubin's statement that there are two registered corporate entities called "Jack Daniels Motors, Inc.," and "Jack Daniels Motors of Upper Saddle River, Inc." It further corroborates the statement that the other business names are d/b/a names with no independent corporate status.

According to Dubin, the Jack Daniels companies use a single form of employee arbitration agreement called the "Jack Daniels Motors Arbitration Agreement," of which Mr. Benincasa's agreement is an example. (Dubin Cert. ¶ 5.) The body of the form agreement does not identify any corporate entity or individual, but simply refers to the parties as "Employer" and "Employee." This format permits the agreement form to be used for all employees of all the Jack Daniels entities. (*Id.*) (*See, e.g.,* Agreement, 1st sentence ("Employer and Employee have determined that they would prefer to arbitrate any dispute ....").)

The only time "Jack Daniels Motors" appears in the Agreement is in its title, not in the body. (*Id.*) Benincasa cannot plausibly claim that he was employed by "Jack Daniels Motors" (no "Inc."), which is not the name of any particular entity in the Jack Daniels family. The designation is consistent with either or both of "Jack Daniels Motors, Inc." or "Jack Daniels Motors of Upper Saddle River, Inc." But to the extent that the title could be viewed as ambiguous, that is simply because this form *was designed* to cover employees of either entity. This discussion is all consistent with Dubin's statement that this is a blanket form of agreement to be used in the Jack Daniels family of corporations and dealerships.

Thus Jack Daniels Motors of Upper Saddle River, Inc., d/b/a Jack Daniels Audi, admits that it is bound by the Agreement. Benincasa must admit that he signed the Agreement and is bound by it. He contends, however, that Jack Daniels Audi is *not* bound. That contention goes contrary to the usual pattern of a signer's attempt to *bind* an alleged non-signatory to the terms of an agreement, not to exclude it from an agreement. More fundamentally, however, Benincasa's position makes no real-world sense. He implies that, simultaneous with his hiring, he entered into an agreement to arbitrate employment disputes with someone *other than* the employer who was hiring him—despite the fact that he is identified as the "Employee," and the counterparty as the "Employer," in the Agreement. If there were some explanation for this

7

apparently nonsensical arrangement, it would be within Benincasa's knowledge, but he offers none.

The title of the Agreement does not negate the only plausible interpretations of the actual terms of the contract. That unavoidable interpretation is that Benincasa as "Employee" was entering into an agreement with the "Employer"—*i.e.,* not with *some* employer, but with *his* employer.

Mr. Benincasa makes much of the fact that two W-2 forms and an earnings statement are issues in the name of "Jack Daniels **Audi** of Upper Saddle River **Inc**." (ECF no. 10-4 (emphasis added).) He cannot mean, however, that *this* entity is his true employer. There is no such entity. *See* pp. 5–6, *supra*. The relevant corporate entity is actually Jack Daniels **Motors** of Upper Saddle River **Inc.**, and the d/b/a for the dealership is Jack Daniels **Audi** of Upper Saddle River (no "Inc.").

The court will rest its interpretation on the substance of the Agreement, not opportunistic *post hoc* quibbles about the wording of its title. Benincasa does not deny that he signed the Agreement when he came on board as a salesman in December 2013. Benincasa does not dispute that he was employed by the Audi dealership. Nor does he offer any evidence to dispute that the Audi dealership falls under the corporate aegis of Jack Daniels Motors of Upper Saddle River, Inc. He offers no alternative to the commonsense explanation that this was an Agreement between himself and the entity that hired him. Mr. Benincasa must be bound to this Agreement because he surely knew he was signing an agreement with his new employer, not with somebody else. *He* objectively manifested an intent to be bound to arbitrate disputes in connection with his new job.

Where the identity of a party to a contract is clearly identified, the use of a generic designation (*e.g.,* "Employer" or "Employee") is permissible. Mr. Benincasa signed the Agreement as "Employee." "Employer" can only have meant his new employer. That the agreement does not explicitly spell out the name of the Employer as "Jack Daniels Motors of Upper Saddle River, Inc.,

8

d/b/a Jack Daniels Audi of Upper Saddle River" does not create an ambiguity. Under the circumstances, the meaning of "Employer" and "Employee" was clear enough.[5]

For all of the above reasons, I am satisfied that Jack Daniels Motors of Upper Saddle River Inc., d/b/a Jack Daniels Audi of Upper Saddle River, has the necessary status under the Agreement to move to compel Mr. Benincasa to resolve his employment disputes in an arbitration forum.

I further find that the claims asserted by Mr. Benincasa are within the scope of the Agreement to arbitrate. The Agreement defines the term "Dispute" as "any claim, dispute, difference, or controversy, whether or not related to or arising out of the employment relationship." That includes "any claim (arising under any federal, state or local statute or ordinance (including claims of discrimination or harassment)." These ADEA and NJLAD claims arise directly from the employment relationship. Statutory claims are not an exception to the

---

[5] There is an alternative route to the same result: equitable estoppel. Even a non-signatory may be bound to an arbitration agreement if "under the traditional principles of contract and agency law," that non-signatory party is rightly bound to the underlying agreement. *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194–95 (3d Cir. 2001) (noting that courts have allowed for third party beneficiaries to compel arbitration against signatories); *Ross v. Lowitz*, 222 N.J. 494, 514 (2015) ("It is a fundamental premise of contract law that a third party is deemed to be a beneficiary of a contract only if the contracting parties so intended when they entered into their agreement."). The situation here is a mirror image of the common situation in which a signer of the agreement asserts estoppel against a non-signer. But a similar principle applies: A person may be bound to an arbitration agreement where he or she has accepted benefits under the contract. *Compare Eric Baker Architecture, P.C. v. Mehmel*, 2013 WL 6169210 at *4 (N.J. Super Ct. App. Div. Nov. 26, 2013) (declining to apply equitable estoppel where there was no evidence that non-signatories sought direct benefits under the contract during its lifetime) *with Bayonne Drydock & Repair Corp. v. Wartsila N. Am., Inc.*, 2013 WL 3286149, at *6 (D.N.J. June 28, 2013) (applying equitable estoppel where non-signatory was beneficiary of contract because without the contract, the non-signatory would not have been the one performing the work).

So even on the dubious assumption that the "Jack Daniels Motors" in the title is an entity separate from Benincasa's employer, the body of the Agreement makes it very clear that the parties intended for the actual "Employer" and its "Employee," Mr. Benincasa, to be bound. Mr. Benincasa accepted employment, worked, and was paid under that arrangement. He is estopped from now claiming that he is not bound by his agreement to arbitrate employment disputes.

general rule that disputes falling within the substantive scope of an arbitration agreement are properly referred to arbitration. *Hilinski v. Gordon Terminal Service Co. of N.J., Inc.*, 265 Fed. App'x 66, 69 (3d Cir. 2008); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26–30 (1991) (finding ADEA claims properly subject to compulsory arbitration pursuant to an arbitration agreement); *Sarbak v. Citigroup Global Markets, Inc.*, 354 F. Supp.3d 531, 541 (D.N.J. 2004) (finding claims under NJLAD could be subject to an arbitration agreement).

When a court finds that the claims must referred to arbitration, it may dismiss the federal action. *Id.* (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595. 600–02 (3d Cir. 2002)). I will do so here.

### IV. Conclusion

For the foregoing reasons, the defendant's motion (ECF no. 9) is **GRANTED** and the matter is **REFERRED TO ARBITRATION**.

An appropriate order accompanies this opinion.

Dated: May 15, 2017

**Kevin McNulty**
**United States District Judge**

10